564 P.2d 1336

WHITFIELD TANK LINES, INC., Herman Pedroncelli and Transport Indemnity Company, Plaintiffs-Appellees,

v.

NAVAJO FREIGHT LINES, INC., and Robert White, Defendants-Appellants.

No. 2688.

Court of Appeals of New Mexico.

May 10, 1977.

Certiorari Denied June 8, 1977.

Henry G. Coors, IV, Robert N. Singer, Coors, Singer & Broullire, Albuquerque, for defendants-appellants.

Thomas S. Watrous, Civerolo, Hansen & Wolf, P. A., Scott McCarty, Marchiondo & Berry, Albuquerque, for plaintiffs-appellees.

## OPINION

LOPEZ, Judge.

The action involved in this appeal was begun in the district court of Taos County by the following parties: plaintiff Whitfield Tank Lines, Inc. (Whitfield) to recover property damages resulting from the alleged negligence of the defendants, Navajo Freight Lines, Inc. (Navajo) and driver, Robert White (White); Transport Indemnity Company (Transport) sued to recover workmen's compensation benefits paid to plaintiff's insured driver, Herman Pedroncelli (Pedroncelli was the driver of the truck owned by Whitfield); plaintiff Pedroncelli sued for personal injuries resulting from the alleged negligence of the defendants, Navajo, and Navajo's driver, White; Navajo counterclaimed against Whitfield and Pedroncelli for property damages.

Before trial the parties agreed to sever Transport as a party, allowing Transport to recover from a verdict rendered for Pedroncelli. The case was tried by a jury which awarded Whitfield the sum of $18,795.70,

and Pedroncelli the sum of $74,400.00. Navajo and White moved for a remittitur, which the court granted, and an amended judgment was entered for Pedroncelli in the amount of $65,000.00. Navajo and White appeal the verdict and judgment Pedroncelli cross-appeals the remittitur. We reverse the judgment and remittitur.

Navajo presents six points for reversal: (1) the trial court erred by giving instructions on negligence per se relating to two statutes, §§ 64–18–8 and 64–18–9, N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2, 1972), both of which had to do with the fact that Navajo's vehicle ended up on the wrong side of the road; (2) the court erred by refusing Navajo's instruction relating to Whitfield's violation of a federal regulation; (3) the court erred by refusing Navajo's instruction relating to Whitfield's violation of § 64–18–1.1 C, N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2, 1972); (4) the court erred by refusing Navajo's instruction regarding the duty of Pedroncelli to drive at a speed consistent with his ability to stop within the range of his headlights; (5) the court erred by denying Navajo the opportunity to present evidence regarding the surrounding circumstances and qualifications of Navajo's accident investigator, who had filed an accident report with the Department of Transportation; and (6) the court erred by permitting a state police officer to explain the meaning of his statement which supposedly gave an opinion on the issue of liability.

Pedroncelli's cross-appeal presents one point: The court erred by denying Pedroncelli's motion to amend the pleadings and by ordering a remittitur.

This case can be resolved by Navajo's first point. Because this case is to be remanded for a new trial, we shall discuss the other points argued by Navajo and the point advanced by Pedroncelli on cross-appeal.

*Facts*

About 6:00 a. m. on January 18, 1973, on U. S. 285, a two-lane highway, a collision occurred between the Whitfield vehicle, driven by Pedroncelli, consisting of the tractor and a propane tanker, and a vehicle owned by Navajo, driven by White, consisting of a tractor and two trailers. The weather was inclement and snowing heavily. The Navajo vehicle was proceeding south and the Whitfield vehicle north. The Navajo vehicle entered a snowdrift and jackknifed, sliding into the northbound lane in the path of the Whitfield vehicle. Whitfield's vehicle attempted to stop, skidded on ice in the roadway, remained in the proper lane of traffic, but collided with Navajo's truck.

*The Court Improperly Submitted Instructions on Negligence Per Se*

The defendants contend that the court committed reversible error by submitting instructions nos. 18 and 19, which were as follows:

"18. There was in force in the state at the time of the occurrence in question a certain statute which provided that:

'Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, and where practicable, entirely to the right of the center thereof.'

"If you find from the evidence that the defendant conducted himself in violation of this statute you are instructed that such conduct constituted negligence as a matter of law."

"19. There was in force in the state at the time of the occurrence in question a certain statute which provided that:

'Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one [1] line of traffic in each direction each driver shall give to the other at least one-half of the main-traveled portion of the roadway as nearly as possible.'

"If you find from the evidence that the defendant conducted himself in violation of this statute you are instructed that such conduct constituted negligence as a matter of law."

Instruction no. 18 related to § 64–18–8, supra, and instruction no. 19 related to § 64–18–9, supra.

"64–18–8. Drive on right side of roadway—Exceptions.—(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, and where practicable, entirely to the right of the center thereof, except . . . [None of the exceptions are applicable].

". . . (b) Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except . . . [None of the exceptions are applicable].

"64–18–9. Passing vehicles proceeding in opposite directions.—Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one [1] line of traffic in each direction each driver shall give to the other at least one-half of the main-traveled portion of the roadway as nearly as possible."

These instructions were requested by Whitfield and relate to the statutory requirement of driving on the right side of the road. The instructions were given in conformity with N.M.U.J.I. Civ. 11.1. Navajo objected asking that the instructions be modified to conform to N.M.U.J.I. Civ. 11.2 which contains a provision allowing justification or excuse of a statutory violation. The following language distinguishes N.M.U.J.I. Civ. 11.2 from N.M.U.J.I. Civ. 11.1:

". . . unless you further find that such violation was excusable or justifiable.

"To legally justify or excuse a violation the violator must sustain the burden of showing that he did that which might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desires to comply with the law."

As we previously stated, N.M.U.J.I. Civ. 11.1, which is also called the "per se" rule, does not contain this excuse or justification language. The instructions for use of N.M.U.J.I. Civ. 11.2, state:

"This instruction should not be given unless the court holds as a matter of law that there is sufficient evidence of excuse or justification for the issue to go to the jury. Absent such evidence the 'per se' rule applies and is covered by instruction UJI 11.1."

Navajo contends that under the law and under the facts in this case, instructions 18 and 19 should have been modified to conform to N.M.U.J.I. Civ. 11.2. See *Stephens v. Dulaney*, 78 N.M. 53, 428 P.2d 27 (1967); *Hayes v. Hagemeier*, 75 N.M. 70, 400 P.2d 945 (1963). The facts which would justify or excuse violation of the aforementioned statutes can be summarized as follows:

The wind was blowing and snow had drifted across the roadway from west to east. It was dark and visibility was not good. The snowdrift at the scene of the accident was 450 feet long and the Navajo truck had traveled into the drift from north to south for 250 feet before the truck suddenly jackknifed. The easterly edge of the drift at its greatest depth and the center of the drift was only eight to ten inches deep. The westerly edge of the snowdrift gradually increased from south to north until it got to a maximum depth of three and one-half feet, then gradually declined again to the north end of the drift. Gradual changes in elevation of the snow are not perceptible until a drift is entered, consequently, the depth of the snowdrift would not have been apparent to the driver. The accumulation of snow was not even apparent to the Whitfield vehicle approaching from the south.

The Navajo truck had encountered other drifts along the road prior to coming upon the drift which caused the truck to jackknife, but the Navajo truck had no difficulty driving through previous drifts. The drift which caused the truck to jackknife appeared to the Navajo driver to be identi-

cal to other drifts which he had successfully negotiated. The Navajo truck would reduce speed to about 35 miles per hour before entering a drift.

The Navajo driver, White, tried to stay in his lane but when the vehicle jackknifed suddenly and without warning the vehicle got away from him. The snowdrift caused the. Navajo vehicle to jackknife. Brakes should not be applied in a snow bank and the Navajo driver did not apply his brakes. Under the circumstances an expert driver would have tried to drive through a snowdrift similar to the one which caused the truck to jackknife but there would have been no warning under such conditions that a jackknife was about to occur. If a vehicle unexpectedly encountered a depth of snow under these conditions, not even an expert could have avoided a jackknife.

■ It is the law in the State of New Mexico that a party is entitled to an instruction on a theory of the case if pled and supported by the evidence. *Reed 'v. Styron*, 69 N.M. 262, 365 P.2d 912 (1961); *Terry v. Biswell*, 66 N.M. 201, 345 P.2d 217 (1959).

Whitfield counters with the proposition that the "per se" instruction was appropriate. *Pavlos v. Albuquerque National Bank*, 82 N.M. 759, 487 P.2d 187 (Ct.App.1971); *Paddock v. Schuelke*, 81 N.M. 759, 473 P.2d 373 (Ct.App.1970). See also *Archibeque v. Homrich*, 88 N.M. 527, 543 P.2d 820 (1975).

However, in the *Pavlos, Paddock* and *Archibeque* cases there was no evidence to excuse the vehicle responsible for the accident from being on the wrong side of the road.

■ We believe the statutes under which instructions nos. 18 and 19 were given were applicable; however, we believe the court committed reversible error in not amending the instructions to conform to N.M.U.J.I. Civ. 11.2. The court should have submitted the instructions with the excuse or justification provision because there was evidence that Navajo's presence in the wrong lane might have been caused by snow, wind and forces beyond anyone's control. These facts could very well have excused a violation of a statute, or at least make the violation a jury question. Reasonable minds could differ as to whether Navajo can be excused from the statutory requirement of driving on the right side of the road; therefore, Navajo was entitled to the requested instructions because a party is entitled to an instruction on a particular theory of the case if supported by the evidence. *Stephens v. Dulaney, supra*.

Furthermore, the court gave instruction no. 17 which reads as follows:

"17. There was in force in the state at the time of the occurrence in question a certain statute which provided that:

'Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rule shall apply: A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.'

"If you find from the evidence that the defendant conducted himself in violation of this statute you are instructed that such conduct constituted negligence as a matter of law, unless you further find that such violation was excusable or justifiable.

"To legally justify or excuse a violation the violator must sustain the burden of showing that he did that which .might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the law."

Instruction no. 17 conforms to the requirements of N.M.U.J.I. Civ. 11.2 because the instruction has the provision for excuse or justification of a violation of the statute. Instruction no. 15 contains similar terminology.

■ We cannot understand how the trial court could have given instructions nos. 15 and 17 to comply with N.M.U.J.I. Civ. 11.2 and then give instructions nos. 18 and 19 and not comply with N.M.U.J.I. Civ. 11.2. All of these instructions relate to the fact that Navajo's vehicle was in the wrong

lane. It is evident that the jury was confused when given two instructions (nos. 15 and 17) which contained the excuse or justification provision, and two instructions (nos. 18 and 19) which dealt with the same subject matter but did not contain the excuse or justification provision. Further contradictory language was added by instruction no. 11. This is N.M.U.J.I. Civ. 13.4. The confusion of the jury is manifest. There were three separate communications from the foreman of the jury to the judge, the final one stated:

> "Instruction no. 11 allows 'His duty is to exercise only the care that a reasonably prudent person would exercise in the same situation,'
>
> "Instruction no. 17 appears to allow such leeway with its quoted statute.
>
> "Instructions no. 18 and 19 point out no such leeway in regards to their quoted statutes and could be interpreted that *by definition* the person is negligent if the vehicle is on the wrong side of the center of the road.
>
> "Is there any conflict between instruction no. 11 and instruction 18 and 19?
>
> "i e in 11 '* * * he has done all that the law requires of him'
>
> "/s/ V. Belindo
> Foreman"

It is not error to give instructions supported by substantial evidence, unless prejudicial. *Terry v. Biswell*, supra. It is error to give instructions which unduly emphasize or are repetitious, especially if they are contradictory. See *State v. Atchison, Topeka and Santa Fe Ry. Co.*, 76 N.M. 587, 417 P.2d 68 (1966).

*Refusal of an Instruction on Violation of a Federal Regulation*

■ Federal regulation, 49 C.F.R. § 392.-14 (1976) provides that "[e]xtreme caution in the operation of a motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist." The evidence shows that Pedroncelli was hauling propane gas and there was a lot of snow. We believe that the facts could justify this instruction; however, failure to do so does not in and of itself constitute reversible error. The error, however, shall be corrected on retrial.

*Refusal of Instruction Concerning Speed*

Navajo asserts that the court should have given instruction no. 22 under the format provided by N.M.U.J.I. Civ. 11.2. This instruction related to § 64–18–1.1 C, *supra*, in effect at the time of the accident which provides:

> "In every event, speed shall be so controlled as may be necessary:
>
> "(1) To avoid colliding with any person, vehicle or other conveyance on, or entering the highway; and
>
> "(2) To comply with legal requirements as may be established by the New Mexico highway department or the New Mexico state police department, and the duty of all persons to use due care."

■ This instruction was refused. We believe that under *Stephens v. Dulaney*, supra, *Lucero v. Torres*, 67 N.M. 10, 350 P.2d 1028 (1960), and *Flanary v. Transport Trucking Stop*, 78 N.M. 797, 438 P.2d 637 (Ct.App.1968), the court should have given this instruction. But failure to do so constitutes reversible error.

*Refusal of Another Instruction Concerning Stopping Distance*

Navajo requested an instruction which stated Pedroncelli's duty to drive at a speed consistent with the ability to stop within the range of the tractor trailer's headlights. The court refused the instruction.

■ Navajo submitted two instructions relevant to this point. Instruction no. 4, which presented the issue of negligence per se, and instruction no. 9, which presented the factual issue of negligence. The question of negligence per se was decided by the New Mexico Supreme Court in *Manufacturers & Wholesalers Indem. Exch. v. Valdez*, 75 N.M. 363, 404 P.2d 562 (1965). Therein the Supreme Court stated:

"The rule that a defendant is negligent per se if he cannot stop within the range of his vision has not been laid down in this jurisdiction, notwithstanding the appellant's position to the contrary."

 The factual issue of driving beyond the "range of vision" is often appropriate for jury determination. As stated by the Supreme Court in the *Manufacturers* case: "We have held that the issue of negligence is such a situation is a question for the trier of the facts." The Supreme Court went on to say:

"It is to be noted that even in jurisdictions which follow the ['range of vision'] rule, *the rule has been held to have no application in cases of emergencies creating unexpected hazards.*" [Emphasis added]

The case *sub judice* presents a classic example of an emergency creating an unexpected hazard. The defendant was not contributorily negligent by outrunning the range of vision of his headlights, thereby resulting in a collision with a stationary object. The defendant's truck jackknifed and came toward the plaintiff. This shortened the plaintiff's response time. The trial court did not abuse its discretion by denying the requested instructions.

### Opportunity to Impeach D.O.T. Report

 A report was made by Navajo's Director of Safety and Personnel after the accident and was submitted to the federal government. The report states that the accident was "preventable" and White was laid off for a couple of weeks without pay. We assume this action was a reprimand. The report was submitted as evidence by stipulation. Navajo wanted to impeach the director who, at the time of trial, either had quit or had been fired. Navajo wanted to impeach the director's credibility. Since the report was submitted by stipulation, however, we believe that the court properly sustained Whitfield's objection.

### Error in Permitting Alleged Opinion Evidence

Navajo's argument under this point concerns testimony by a state police officer. The pertinent testimony is as follows:

"Q. Did you say anything to him, or did he say anything to you?

"A. I don't remember what exactly was said, but I made the comment that that [a piece of equipment taken from the Navajo truck] would be partially down payment on the new truck.

"Q. What did you mean by that?"

At this point counsel for Navajo objected. The trial court overruled Navajo's objection. The witness answered as follows:

"Q. Go ahead, Officer. Who did you make that statement to?

"A. Well, I don't know if I directed it to anybody in particular. They were all standing around there, the safety representative for both companies, and I don't —the wrecker driver, I don't know who else was standing there.

"Q. You took that gladhand, [the equipment in question] or that gladhand was taken off the Navajo truck, is that correct?

"A. Yes, sir.

"Q. Did you mean the Navajo truck would have this as a down payment for the Whitfield truck?

"A. Yes, sir."

 Navajo's argument is based on the premise that the testimony was an opinion by the state police officer, an opinion on liability. We hold that there was no harm done to either party by the statements. Also, the expression of opinion was admissible under N.M.R.Evid. 704 [§ 20–4–704, N.M.S.A. 1953 (Supp.1975)].

### Pedroncelli's Cross-Appeal

Pedroncelli's cross-appeal asserts that the trial court erred by denying several attempts to amend the pleadings and by ordering a remittitur in the amount of $9,400.00. Pedroncelli's original complaint asked for $50,000.00 medical damages and $15,000.00 for lost wages and earning capacity. The jury came in with a verdict of $74,400.00.

We believe that there was testimony, given to the jury without objection, from which the jury could have concluded that a verdict in the sum of $74,400.00 was reasonable. The trial court found:

"3. The jury was not influenced by passion, prejudice, or sympathy, and was not mistaken as to the measure of damages. *Both the amount claimed and the verdict are reasonable and supported by the evidence. The verdict is excessive only because it exceeds the prayer.*" [Emphasis added]

No objection or challenge was made to this finding.

 We believe that the court could not remit $9,400.00 simply because the verdict exceeded the prayer by that amount. We fail to see anything in the record which would justify a remittitur. It is the policy of the law to freely allow amended pleadings when justice requires. *Constructors, Ltd. v. Garcia*, 86 N.M. 117, 520 P.2d 273 (1974); N.M.R.Civ.P. 15(a) [§ 21–1–1(15)(a), N.M.S.A. 1953 (Repl.Vol. 4, 1970)]. The defendants have made no showing whatsoever of actual prejudice which would justify a denial of plaintiff's motion to amend the complaint to conform to the evidence. *Silva v. Noble*, 85 N.M. 677, 515 P.2d 1281 (1973); N.M.R.Civ.P. 15(b) [§ 21–1–1(15)(b), N.M.S.A. 1953 (Repl.Vol. 4, 1970)]. To deny plaintiff the opportunity to amend the complaint on the sole ground that the recovery exceeded the *ad damnum* is an abuse of discretion. *Cf. Kirby Cattle Co. v. Shriners Hospitals for Crippled Children*, 88 N.M. 605, 544 P.2d 1170 (Ct.App. 1975).

"The prayer does not limit the amount of recoverable damages. . . . In brief, it is the duty of the court to grant relief to which a party is entitled irrespective of the prayer for relief in the pleadings." Moore's Federal Practice § 54.62 (1971); N.M.R.Civ.P. 54(c) [§ 21–1–1(54)(c), N.M.S.A. 1953 (Repl.Vol. 4, 1970)]. See also *LuVaul v. Holmes*, 63 N.M. 193, 315 P.2d 837 (1957).

The judgment of the trial court is reversed. Navajo and White are granted a new trial.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

SUTIN, J., concurring in part and dissenting in part.

SUTIN, Judge. (concurring in part and dissenting in part).

We are involved with a simple highway truck accident that occurred in Taos County, New Mexico, on January 18, 1973, caused by a snowdrift on the highway. However, there was a complaint with three plaintiffs and a counterclaim with two defendants in which opposing parties sought property damage and personal injuries.

Before and during trial, opposing attorneys assaulted and battered each other for days with furious arguments, accusations, differences of opinion, the use and nonuse of witnesses, the lack of time granted defendants to present their case, and many similar oral tongue fights. The attorneys fought with their gloves off, with no holds barred and without any courtesies of debate. No punches were pulled. An old saw found in many languages says: "He that fights for his life and runs away may live to fight another day."

In the trial of a lawsuit, where neither party runs away, both parties may live to fight another day.

Many fouls were committed in this fight.

When instructions are submitted to the jury, it is a simple task for the trial court to submit U.J.I. instructions pertinent to the facts presented. Before submitting the instructions, the court is made aware of errors by objections made. It should know that attorneys often overstep their bounds in the submission of requested instructions, and then use them as a sledgehammer in the fight. Time, patience and study are essential ingredients for the determination of proper instructions. *When requested instructions are refused, reasons for refusing instructions should be stated in the record.* Hurrying or rushing into submission of the instructions to the jury as a time sequence

for the conclusion of the trial can lead to reversible error. This means the loss of a year or more in time, a loss of expenses and attorney fees paid, and often a loss of a witness or two.

Let us take a look at the confusion in this case. It illustrates the importance of giving instructions which are simple in language, clear to the average mind, and free from any appearance of doubt in their meaning. Instructions are taken to the jury room. Jurors today read the instructions carefully because they are bound by them. When they do not understand the language or are perplexed by the various instructions given, confusion arises. When this occurs, we must reverse.

The foreman of the jury, during deliberations, submitted three memoranda to the court, questions to be answered:

(1) "Do the last two paragraphs of instruction 17 apply to instructions 18 and 19[?]

ANSWER: "No.

"Under instruction 11, if a person has done all that requires of him, can he still be guilty of violating a statute[?]

ANSWER: "Yes.

(2) "Referring to Instruction #11, if guilty *of violation of either Inst. #17, 18 or 19* ("Statutes") can he be found not guilty of negligence under #11[?]

ANSWER: "The determination of negligence is the duty of the jury.

(3) "Instruction No. 11 allows "His duty is to exercise only the care that a reasonably prudent person would exercise in the same situation.

"Instruction No. 17 appears to allow such leeway with its quoted statute.

"Instructions No. 18 & 19 point out no such leeway in regards to their quoted statutes & could be interpreted that *by definition* the person is negligent if the vehicle is on the wrong side of the center of the road.

"Is there any conflict between instruction No. 11 & instructions 18 & 19?

i.e. in 11 '. . . he has done all that the law requires of him'

ANSWER: "You are to consider the instructions as a whole."

In addition to this confusion, the court gave instruction No. 15, requested by plaintiff Whitfield. It was *not* an U.J.I. instruction. It reads:

If you find from the evidence presented in this case that the Navajo Freight Lines, Inc. tractor-trailer was on the wrong side of the road at the instant of the collision, and if you find that Navajo Freight Lines, Inc. and Robert White *cannot excuse or justify their presence on the wrong side of the road,* then you are instructed that said conduct constitutes negligence on the part of Defendants Navajo Freight Lines, Inc. and Robert White. [Emphasis added.]

This instruction added fuel to the fire.

Plaintiffs did win the verdict of the jury, but the plaintiffs created confusion confounded. It ended in a 10–2 verdict of the jury for the plaintiffs. This is not the way to win a fight.

Defendants' requested instruction, refused by the court, reads:

There was in force at the time of the accident in question a certain federal regulation which provided that:

"Extreme caution in the operation of a motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust or smoke adversely affect visibility or traction. Speed shall be reduced when such conditions exist."

If you find from the evidence that the Plaintiff conducted himself in violation of this federal regulation you are instructed that such conduct constituted negligence as a matter of law, unless you further find that such violation was excusable or justifiable.

To legally justify or excuse a violation the violator must sustain the burden of showing that he did that which might reasonably be expected of a person of ordinary prudence acting under similar

circumstances who desired to comply with the law.

This instruction related to a federal regulation governing interstate carriers. 49 C.F.R. § 397.2.

Whitfield was an interstate carrier hauling hazardous and flammable propane. Pedroncelli testified that he took an I.C.C. examination, that he was hauling propane, and that he was on a run from Albuquerque to Alamosa, Colorado. Without recitation of the facts, there was sufficient evidence to submit the instruction to the jury. Plaintiffs do not assert that the evidence is not sufficient to bind Whitfield to the federal regulations.

Motor carrier regulations stand in the shoes of state statutes, the violation of which constitutes negligence per se. *Taylor v. Pennsylvania Railroad Company*, 246 F.Supp. 604 (D.Del.1965) followed in *Sammons v. Ridgeway*, 293 A.2d 547 (Del.Sup. 1972). See *Tri-State Casualty Ins. Co. v. Loper*, 204 F.2d 557 (10th Cir. 1953).

Plaintiffs cannot complain that this instruction applied only to plaintiffs and not defendants—that it was not bilateral. This type of instruction may be applicable to defendants if the facts support it. If so, plaintiffs have the duty of tendering a similar instruction or request the trial court to make it applicable to both parties.

I disagree with Judge Lopez' opinion that this is harmless error. The failure to give this instruction is reversible error.

Defendants' requested instruction No. 22 was an instruction based on § 64–18–1.1(c), N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2). I disagree with Judge Lopez' opinion that this was harmless error. The failure to give this instruction was reversible error.

Defendants' requested instructions Nos. 4 and 9, regarding the duty of an operator of a motor vehicle to drive at such a rate of speed so as to stop in time within the range of his vision to avoid a collision, were not U.J.I. instructions and were properly refused. Section 21–1–1(51)(c)(e), N.M.S.A. 1953 (Repl.Vol. 4).

Pedroncelli's cross-appeal is moot. He can now amend his complaint to recite a larger amount of damages claimed.