Josef R. SILBERHORN,
Plaintiff-Appellant,

v.

GENERAL IRON WORKS COMPANY,
Defendant-Appellee.

No. 78–1148.

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 7, 1978.

Decided Oct. 12, 1978.

Alex Stephen Keller of Keller, Dunievitz & Johnson, Denver, Colo., for plaintiff-appellant.

Bruce W. Sattler and L. Tyrone Holt of Holland & Hart, Denver, Colo., for defendant-appellee.

Before PICKETT, McWILLIAMS and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

Josef R. Silberhorn, a native of Hungary and naturalized United States citizen, and a former employee of General Iron Works Company doing business near Denver, Colorado, brought this action alleging that the company had discharged him because of his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1).[1] After a trial without a jury the court concluded as a matter of law that Silberhorn had established a prima facie case of employment discrimination by the company. The court then made a factual finding that the discharge of Silberhorn was not tainted with discriminatory motives, and dismissed the complaint. This appeal presents the question of whether this finding is supported by sufficient evidence and is not clearly erroneous.

In the trial of Title VII cases such as this the law is settled that initially the employee is required to make a prima facie showing of racial discrimination on the part of the employer. The prima facie showing is not the equivalent of a factual finding of discrimination, but the burden then shifts to the employer to prove by a preponderance of the evidence that the discharge was for legitimate and nondiscriminatory reasons. The employee shall then have an opportunity to rebut that evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). More recently, in *Furnco Construction Corp. v. Waters*, —— U.S. ——, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Court explained the prima facie rule of *McDonnell Douglas*, as follows:

> When the prima facie case is understood in the light of the opinion in *McDonnell Douglas*, it is apparent that the burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race. To prove that, he need not prove that he pursued the course which would both enable him to achieve his own business goal *and* allow him to consider the *most* employment applications. . . .

To dispel the adverse inference from a prima facie showing under *McDonnell Douglas*, the employer need only "articulate some legitimate nondiscriminatory reason for the employee's rejection." *McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. 1817 at 1824.

See also *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977).

The determination of the factual issue of whether there was a discriminatory discharge is for the trial court, and its finding will not be disturbed on appeal unless clearly erroneous. *Olson v. Philco-Ford*, 531 F.2d 474 (10th Cir. 1976); *Williams v. Southern U. Gas. Co.*, 529 F.2d 483 (10th Cir. 1976), cert. denied, 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1977); *Woods v. North American Rockwell*, 480 F.2d 644 (10th Cir. 1973).

Silberhorn was born in Budapest, Hungary, in 1926, immigrated to the United States in 1957, and became a naturalized citizen in 1964. He was a welder by trade and obtained employment with General Iron Works Company in 1966. He was discharged on March 10, 1975, for what appeared to be violation of safety rules. During the period of Silberhorn's employment with the company his association was not very pleasant. He was erratic and subject to displays of violent temper. Over the nine-year period he engaged in numerous conflicts and disagreements with fellow employees, and sometimes with his superiors. During these arguments and disputes vulgarisms and obscenities were often directed toward each of the participating parties. On at least two occasions he was referred to as an Hungarian, supplemented by vulgar language. On one occasion he used vulgar

---

1. Section 2000e–2(a)(1) is as follows:

   (a) It shall be an unlawful employment practice for an employer—

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; . . . .

terms toward an employee, which resulted in fisticuffs in which Silberhorn did not fare very well. The evidence is without dispute that throughout his employment company supervisors made special efforts to assist Silberhorn with his work. The record contains no evidence that the company discriminated in any manner against Hungarian or any other non-native Americans. It is doubtful that Silberhorn made a prima facie case of racial discrimination, but that issue is not contested here.

■ General Iron Works produces and repairs a variety of heavy metal products which requires the employment of numerous welders who engage in varied welding tasks. Following the welding process the welded parts are usually ground smooth by grinding equipment before delivery to customers. The grinding equipment includes a grinding wheel made up of steel bristles which is operated by compressed air and sometimes reaches a speed of 6,000 RPM. When in operation the steel bristles are exposed to the surface of the welded material, which frequently breaks off and is dangerous to individuals close by. The incident which led to Silberhorn's discharge occurred when a co-worker was working in the same area where Silberhorn was doing his work. To protect Silberhorn, the co-worker placed a shield between the two. The co-worker testified that without warning the shield came flying back at him, and when it was replaced Silberhorn continued to push it back onto him. The co-worker lost his balance but was able to get the grinders stopped without injury to himself. Company supervisors learned of the incident and made an investigation at which the co-worker and Silberhorn appeared, together with witnesses who had observed the incident. As a result of the inquiry Silberhorn was discharged. The record is devoid of any evidence that the discharge resulted because of Silberhorn's national origin. The court found that the discharge resulted from a "good faith, sincere belief that a legitimate non-discriminatory reason for discharge existed. . . ." This finding is supported by the evidence and is not clearly erroneous.

AFFIRMED.