Phyllis A. DENNY, Plaintiff-Appellant,

v.

HUTCHINSON SALES CORPORATION, a Colorado Corporation, Defendant-Appellee.

Homer and Carrie Young, Richard and Trudie Hoard, and Harold and Thelma Brown, Intervenors-Appellants.

No. 79–1494.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 15, 1980.

Decided May 28, 1981.

Gary M. Jackson, Denver, Colo., (Anne M. McCarthy of DiManna, Eklund, Ciancio & Jackson, Denver, Colo., with him on briefs), for plaintiff-appellant.

David M. Berrett, Denver, Colo., (Richard L. Harring of Calkins, Kramer, Grimshaw & Harring, Denver, Colo., with him on briefs), for defendant-appellee.

Before SETH, Chief Judge, LOGAN, Circuit Judge, and BOHANON, District Judge *.

LOGAN, Circuit Judge.

Phyllis Denny and intervenors appeal the district court's judgment pursuant to a jury verdict that defendant Hutchinson Sales Corporation (Hutchinson) did not discriminate against them in the sale of housing under 42 U.S.C. §§ 1982 and 3604.

Hutchinson asserts that the district court had no jurisdiction over either the section 1982 or section 3604 claims because substantially equal state remedies were available. Alternatively, it argues the section 3604 claim was not timely filed. Because we find the court had jurisdiction over the section 1982 claim, we consider Denny's arguments that (1) the district court improperly excluded the probable cause determination of the Colorado Civil Rights Commission (CCRC) as evidence, (2) the court erred in refusing to allow the Director of Housing of the CCRC to give an opinion concerning whether discrimination existed, and (3) the jury verdict was not supported by the evidence.

On December 21, 1975, Denny, a black, entered into a receipt and option contract for the purchase of a home on a cul-de-sac

---

\* Honorable Luther L. Bohanon of the United States District Court for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

of the Hutchinson Hills development in Denver, Colorado. Hutchinson Hills is in a predominately white neighborhood. Denny was among the first to buy on the cul-de-sac, and construction of other homes in that area had not begun. During the next year four other black families purchased and occupied homes on the cul-de-sac, and for a time only blacks actually lived there. Home sales were made both directly by Hutchinson and indirectly through independent realtors. Although white families had purchased homes on the cul-de-sac, Hutchinson allowed two of the initial buyers to cancel their contracts. While there is some conflict in the evidence, it establishes that, by the time of trial, either ten or eleven homes existed on the cul-de-sac, five being owned by black residents, three or four by white residents, one house rented to blacks, and the final house was vacant.

Denny filed a complaint with the United States Department of Housing and Urban Development (HUD) on December 23, 1976, and with the Colorado authorities on January 3, 1977. She charged that Hutchinson had steered her and other blacks into the cul-de-sac because of their race. In late August 1977, both HUD and CCRC determined there was probable cause to believe that housing discrimination in the form of racial steering had occurred, and sought to resolve the complaint by conference and conciliation. These efforts came to naught, and on October 17, 1977, HUD issued Denny a right to sue letter, indicating that she should file suit within thirty days if she wished to pursue the matter.

On November 17, 1977, Denny filed suit in federal district court against Hutchinson alleging violations of 42 U.S.C. §§ 1982 and 3604. In March 1978, she was joined by three other black families who sued under 42 U.S.C. § 1982. The jury found Hutchinson had not discriminated; Denny and intervenors appeal the court's denial of their motion for judgment n.o.v. or for a new trial.

---

1. In view of this holding, we need not treat the question whether filing of the section 3604 claim was untimely.

## I

■ Hutchinson contends that the district court had no jurisdiction because the Fair Housing Act complaint was untimely filed and because substantially equal state remedies were available under Colorado law. We hold Colorado law provides a comparable remedy, the existence of which precludes federal court jurisdiction over the Fair Housing Act claim.[1] For reasons hereafter stated we hold the court properly accepted jurisdiction over the section 1982 claim.

42 U.S.C. § 3610(d) provides in pertinent part that:

"no such civil action may be brought in any United States district court if the person aggrieved has a judicial remedy under a State or local fair housing law which provides rights and remedies for alleged discriminatory housing practices which are substantially equivalent to the rights and remedies provided in this subchapter."

HUD has determined that the Colorado Fair Housing Act of 1959, Colo.Rev.Stat. § 24–34–401 et seq. (1973), provides substantially equivalent rights and remedies. 24 C.F.R. § 115.11 (1980). The administrative agency's interpretation of a statute which it is charged with administering is accorded great deference and controls unless it is plainly erroneous. *Board of Directors and Officers, Forbes Fed. Credit Union v. National Credit Union Adm.*, 477 F.2d 777, 784 (10th Cir. 1973). Denny claims HUD's interpretation is erroneous because the Colorado statute, unlike the Fair Housing Act, provides for neither attorney fees nor punitive damages; without these additional remedies, it argues, some persons will be denied access to the courts.

■ "Substantially equivalent" in the statute is a relatively open-ended term. The Colorado housing law is designed to remedy the same acts of discrimination in housing that are proscribed by the Fair

Housing Act, and the absence of provisions for attorney fees and punitive damages does not make HUD's interpretation plainly erroneous. Therefore, we hold that by operation of 42 U.S.C. § 3610(d) the district court lacked subject matter jurisdiction over any claim premised upon the Fair Housing Act.

■ Blacks who believe they are aggrieved by housing discrimination have the alternative of bringing their cause of action under 42 U.S.C. § 1982, which provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Hutchinson points out that Congress granted exclusive jurisdiction over housing discrimination claims to state courts when applicable state rights and remedies are substantially equivalent to those of the Fair Housing Act. It argues that the exercise of federal court jurisdiction over such a claim under section 1982 would subvert the intent of Congress to entrust such cases to state courts.

■ When the Fair Housing Act was passed, it was uncertain whether 42 U.S.C. § 1982 applied to private discrimination. *See Jones v. Alfred H. Mayer Co.*, 379 F.2d 33 (8th Cir. 1967), *rev'd*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). In *Jones*, the Court noted that Congress passed the Fair Housing Act to insure against private discrimination and to provide the "federal machinery for enforcement of the rights guaranteed under Section 1982 of Title 42." 392 U.S. at 416, 88 S.Ct. at 2190. The Court expressly declared that the Fair Housing Act in no way limited the application of § 1982: "The Civil Rights Act of 1968 does not mention 42 U.S.C. § 1982, and we cannot assume that Congress intended to effect any change, either substantive or procedural, in the prior statute." 392 U.S. at 416 n.20, 88 S.Ct. at 2191 n.20. *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969). Additionally, many rights and remedies provided under the Fair Housing Act are unavailable to litigants suing under section 1982. *See Jones*, 392 U.S. at 413–14, 88 S.Ct. at 2189. Thus, the preemptive requirement of the Fair Housing Act cannot always be circumvented by resort to section 1982. Consequently, we hold that federal court jurisdiction grounded upon 42 U.S.C. § 1982 is not preempted by the existence of state or local housing laws that are substantially similar to those found in the Fair Housing Act.

■ In accord with other courts which have considered the issue, we hold that section 1982 does not incorporate the time limitations of 42 U.S.C. § 3610. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 899 (3d Cir. 1977); *Warren v. Norman Realty Co.*, 513 F.2d 730, 733 (8th Cir. 1975); *Hickman v. Fincher*, 483 F.2d 855 (4th Cir. 1973). Since section 1982 contains no time limitations for suit, we look to state law for the relevant statute of limitations. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d at 900. Under no circumstances is the applicable statute of limitations less than two years. *See* Colo.Rev.Stat. § 13–80–106 (1973); *Salazar v. Dowd*, 256 F.Supp. 220, 223 (D.Colo.1966). In the instant case, plaintiffs filed suit within two years of the date the action accrued. Thus, jurisdiction over plaintiffs' claims was properly exercised under 42 U.S.C. § 1982.

## II

Denny contends that the district court committed reversible error in refusing to admit the CCRC probable cause determination in favor of plaintiffs and in refusing to allow Eleanor Crow, the Director of Preventive Programs for the CCRC, to testify whether she believed discrimination had occurred. The record indicates that the district court refused to admit the CCRC report and findings because they were based in part on second and third level hearsay; the court thought it fundamentally unfair to place upon Hutchinson the onus of dis-

proving such hearsay when the burden of establishing a prima facie case was upon plaintiffs. The court indicated that Crow, offered as an expert witness, could testify as to matters within her personal knowledge and as to what the defendant and its agents told her and that she could testify for impeachment purposes. At trial Crow was allowed to testify that there were only 42 chances out of a million that the neighborhood composition could occur without discrimination, and that it was "highly improbable that this would have occurred by chance alone." The district court ordered that Crow not testify on the ultimate issue of discrimination, however, on the ground that the testimony would be more prejudicial than probative and because it doubted that this was an area beyond the range of the perception of the jury.

Denny argues that the CCRC report was properly admissible under either 28 U.S.C. § 1732(a) (repealed 1975) or under Fed.R. Evid. 803(8)(C). Because 28 U.S.C. § 1732(a) was repealed prior to trial, it has no application to this case. The hearsay exception intended to govern the admissibility of public records and reports is Fed.R. Evid. 803(8). Subsection (C) of this rule, as applied to civil actions, admits reports which set forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The Supreme Court has ruled that under Rule 803(8)(C) administrative findings made with respect to claims of racial discrimination are admissible in a federal trial de novo. *Chandler v. Roudebush*, 425 U.S. 840, 863 n.39, 96 S.Ct. 1949, 1961 n.39, 48 L.Ed.2d 416 (1976). Similarly, arbitral findings concerning a claim of employment discrimination in the private sector are admissible, presumably under 28 U.S.C. § 1732. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21, 94 S.Ct. 1011, 1025 n.21, 39 L.Ed.2d 147 (1974). These findings were, of necessity, based in part on matters outside the personal knowledge of the preparers of those reports.

But Rule 803(8)(C) allows the court to exclude the reports if "the sources of information or other circumstances indicate lack of trustworthiness." The Advisory Committee noted that the following factors could be of assistance in passing upon the admissibility of evaluative reports: the timeliness of the investigation; the special skill or experience of the investigator; whether a hearing was held and the level at which it was conducted; possible motivation problems suggested by *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) (report prepared by defendant for purposes of litigation not a business record). Fed.R.Evid. 803(8), 28 U.S.C.A. (1975) Notes of the Advisory Committee. These factors indicate that the admissibility of the reports in *Chandler* and *Gardner-Denver* stands on firmer ground than the CCRC report in this case because the findings in those reports were made after hearings. The CCRC findings in the instant case were made pursuant to an *ex parte* investigation. The lack of formal procedures and an opportunity to cross-examine witnesses are proper factors in determining the trustworthiness of the finding. In *Franklin v. Skelly Oil Co.*, 141 F.2d 568 (10th Cir. 1944) (cited by the Advisory Committee to provide guidance on the issue of trustworthiness), we held a report of a gas inspector relating to the cause of a fire was properly excluded at trial because the findings contained therein were "merely the opinion of one whose official office and duty does not rise to the dignity of an adjudicator of causes and effects." *Id.* at 572. In *Franklin*, we noted that the trustworthiness of a report is particularly questionable when its conclusion would not be admissible by the direct testimony of the maker or the opportunity to cross-examination had been denied. *Id.* We believe that "the trial court is the first and best judge of whether tendered evidence meets the standard of trustworthiness and reliability." *Id.* We held in *Nulf v. International Paper Co.*, 656 F.2d 553 (10th Cir. 1981), that the admission of the EEOC report is a matter of the trial court's discretion. *See Walton v. Eaton Corp.*, 563 F.2d 66, 75 (3d Cir. 1977); *Cox v.*

*Babcock and Wilcox Co.,* 471 F.2d 13, 15 (4th Cir. 1972); *Heard v. Mueller Co.,* 464 F.2d 190, 194 (6th Cir. 1972).

■ We cannot say the trial court abused its discretion by refusing to admit the report. We also cannot say the court abused its discretion in prohibiting Crow to testify on the ultimate issue. The jury was presented substantial admissible evidence on the matter and given a full statistical explanation of the events. There seems little probative value in either the CCRC determination or Crow's opinion on whether discrimination existed. Moreover, there is a real possibility that the jury would give undue deference to such evidence. *See Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164, 1176 (3d Cir. 1977).

### III

■ Denny also contends that the jury verdict is unsupported by the evidence. The parties disagree regarding whether discriminatory intent need be proven to make out a prima facie case and whether evidence of discriminatory intent or the lack thereof is material to a case brought under 42 U.S.C. § 1982. *Chicano Police Officer's Ass'n v. Stover,* 552 F.2d 918 (10th Cir. 1977), is dispositive of this issue. In *Stover,* this Court held on rehearing that in light of *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), actions are not unlawful under 42 U.S.C. §§ 1981, 1983, and 1985 solely because they produce a racially disproportionate impact. Because section 1982 is phrased in a manner similar to section 1981 and both statutes are of a common genesis,[2] Congress must have intended each to incorporate the same standard of intent. In *Washington v. Davis,* the Supreme Court determined that discriminatory purpose was a required element of proving a law invalid under the Equal Protection Clause. 426 U.S. at 239–40, 96 S.Ct. at 2047–48. Just as the Supreme Court could not read "equal protection of the laws" to render a statute invalid merely because it

impacted one racial group differently from another, we cannot read "shall have the same right" in section 1982 to invalidate a law or practice simply because of a disproportionate impact. The "same right" language indicates that all persons shall be treated equally, not that all persons shall have the same status or obtain the same objectives. The *Washington* Court's fear that a disproportionate impact rule could invalidate a whole range of statutory and regulatory laws simply because they "may be more burdensome to the poor and to the average black than to the more affluent white," *id.* at 248, 96 S.Ct. at 2151, seems applicable to cases arising under sections 1981 and 1982, these statutes being broad enough to apply in a large number of public and private transactions and relationships. Although the Supreme Court has never directly confronted this issue,[3] it held that by its plain meaning section 1982 encompasses "every *racially motivated* refusal to sell or rent." *Jones v. Alfred H. Mayer Co.,* 392 U.S. at 421–22, 88 S.Ct. at 2193–94 (emphasis added). For these reasons, we hold that plaintiff must prove discriminatory purpose to prove a violation of 42 U.S.C. § 1982.

■ With this in mind, we review the adequacy of the evidence. Plaintiffs produced substantial statistical evidence relating to the disproportionate number of blacks living on the cul-de-sac. This evidence is relevant to a finding of discriminatory purpose. *Washington v. Davis,* 426 U.S. at 242, 96 S.Ct. at 2049. Evidence of open statements by the defendant of an intent to discriminate is not necessary to prove a civil rights violation. *See Dailey v. City of Lawton,* 425 F.2d 1037, 1039 (10th Cir. 1970). In addition, plaintiffs presented evidence tending to show that not all blacks had been shown all available homes and that some white homeowners on the cul-de-sac had been allowed to cancel their contracts.

■ Assuming that plaintiffs made out a prima facie case, however, adequate evi-

---

2. The two sections originally were comprised in a single section of the Civil Rights Act of 1866. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. at 422, 88 S.Ct. at 2194.

3. *Davis v. County of Los Angeles,* 440 U.S. 625, 637, 99 S.Ct. 1379, 1386, 59 L.Ed.2d 642 (1979) (Powell, J., dissenting) (42 U.S.C. § 1981 case vacated as moot).

dence was presented by Hutchinson to rebut the case. By their own admission, intervenors Brown and Hoard were each shown homes outside the cul-de-sac and selected a home on the cul-de-sac for reasons relating to the physical properties of the lots (drainage and size). The evidence indicates that another black family, the Edwards, had ample opportunity to locate outside the cul-de-sac. Prior to the time Denny filed her complaint with the CCRC, according to the testimony of the vice president of sales Hutchinson had sold homes outside the cul-de-sac to four black families. Hutchinson sales management and personnel testified that it was company policy to treat blacks and whites in the same manner and that it was against company policy to disclose the race of homeowners to prospective buyers or steer blacks to a particular area. In addition, independent realtors who assisted some of the plaintiffs testified that they did not believe their clients were being treated differently from white homebuyers. Thus, on the record, adequate evidence was presented to support the verdict.

AFFIRMED.