Lewis E. **FOSTER**, Plaintiff,

v.

**MCI TELECOMMUNICATIONS, CORPORATION**, Defendant.

Civ. A. No. 81–C–2076.

United States District Court, D. Colorado.

Jan. 20, 1983.

**332**

Penfield W. Tate, II, Trimble, Tate & Nulan, Denver, Colo., for plaintiff.

Richard C. Hotvedt, Susan S. Sauntry, Washington, D.C., George W. Mueller, Jr., Burns, Wall, Smith & Mueller, Denver, Colo., Judy A. Julian, MCI Telecommunications Corp., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

### CARRIGAN, District Judge.

Plaintiff, Lewis E. Foster, brought this action against the defendant, MCI Telecommunications Corporation ("MCI"), to redress alleged racial discrimination. Plaintiff, a black male, claims that he was fired and not subsequently rehired by the defendant in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. MCI is an "employer" within the meaning of 42 U.S.C. § 2000e(b). Jurisdiction is founded on 28 U.S.C. § 1343, 42 U.S.C. § 2000e–5(f), and 28 U.S.C. § 1337. This memorandum opinion and order consti-

tute my findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).

## I.  GENERAL BACKGROUND.

Plaintiff's employment with the defendant started on April 4, 1978, in Dallas, Texas, where the plaintiff was an "Execunet" salesperson. Execunet is a telephone service offered by MCI, and the plaintiff sold this service to businesses. In November 1978, the plaintiff transferred to the defendant's offices in Denver, Colorado. There were two other salespeople, both anglos, in the Denver office at that time.

Plaintiff proved successful as an Execunet salesperson. He consistently exceeded the sales quotas that MCI demanded of its employees, and his commissions placed him near the top of the Execunet sales staff. Moreover, he established good rapport with both customers and fellow employees.

By the time the events giving rise to this dispute occurred, MCI already had established success in selling Execunet to businesses, but had not enjoyed similar success among prospective residential customers. Thus MCI's transmission facilities were used near capacity during business hours, but were not heavily used during other hours. To increase the use of these facilities at hours other than high-demand business hours, MCI needed to increase residential subscriptions for its services.

MCI embarked on a television advertising campaign to increase residential subscriptions. The campaign did increase MCI's residential subscriptions, but also had the unanticipated, incidental effect of increasing commercial subscriptions as well. The large, unexpected increase in commercial subscriptions led MCI to change its methods of marketing commercial services to stress more television advertising and less direct sales, resulting in a need for fewer Execunet salespeople. Some were laid-off on June 3, 1980.

On the morning of June 3, 1980, before the lay-offs, there were nine Execunet salespeople employed in the Denver office. Eight were anglos; the plaintiff was the only black.

By that afternoon, the defendant employed only four Execunet salespeople. All were anglos. In the following few months, two of the anglos who had been laid-off were rehired. Only two anglos of those laid-off were not subsequently rehired, and there is no evidence that those two actively sought reemployment. The plaintiff repeatedly sought to be rehired, but to no avail.

To recapitulate: Changes in marketing methods led the defendant to fire five of its nine Denver Execunet salespeople, including the only black. Three of those five, including the only black, subsequently sought reemployment. Two of those three, both anglos, were rehired, but not the black. All admit that the black was eminently well qualified, experienced, personable, and successful as a salesman. Defendant claims that business necessity compelled it to make these choices.

When MCI decided to change its marketing approach, there were 64 Execunet salespeople in the western region. Mr. Gallagher, vice president of sales for the western region, testified at trial that the decisions to retain or fire individual employees occurred during a period of a few hours the day before the employees were fired. Gallagher was not familiar with many employees, and was unable to spend substantial time considering individual employee qualifications, or to weigh the merits of retaining each as against the others. Gallagher therefore asked his branch managers to recommend which employees should be retained and which laid off, and he adopted the managers' recommendations. Thus Gallagher actually exercised only a cursory, supervisory role in the employment decision affecting any individual employees.

This left the actual decisions in the hands of the branch managers. The Denver branch manager, who recommended which Denver employees should be retained and

which fired, was Mr. Harrell, and the evidence indicates that Gallagher followed Harrell's recommendations. I find that, as a practical matter, Harrell was almost solely responsible for deciding which Denver salespeople were to be fired, and for deciding, later, which would be rehired. Since Harrell decided which Denver employees would survive the lay-offs, it is essential to determine why Harrell made the decisions he did.

In late July 1980, almost two months after the plaintiff was fired, Gallagher received a report that Harrell was a racist. Gallagher flew to Denver to investigate, and Harrell was fired following the investigation. At trial, Gallagher testified that Harrell was not fired for being a racist, but for "other reasons." I find Gallagher's testimony on this matter to be incredible. Gallagher made no attempt to explain what the "other reasons" were.[1] Harrell had been employed by MCI, in a responsible, supervisory position, for several years, yet suddenly was fired after a race discrimination charge was investigated. From the testimony, the circumstantial evidence, and my observations of the witnesses, it is a fair inference that MCI's management concluded either that Harrell was indeed a racist or had been guilty of racial discrimination, and I so find. It was Harrell who, less than two months before, had fired and declined to rehire Foster.

## II. LIABILITY

### A. Title VII.

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the order for presentation of proof in a "disparate treatment" case under Title VII. Subsequently, in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme

---

1. Gallagher made no attempt to explain who made the charges of racism against Harrell, what evidence was cited to support the charges, or how the investigation was conducted. The facts surrounding the charge that Harrell was a racist remain shrouded in mystery.

The undisputed facts are that there was a charge of racism, it was investigated, and Harrell was promptly fired, with no other reason or explanation being given for his termination. Harrell did not testify at the trial.

Court clarified the respective burdens of proof and of going forward corresponding to each step in the presentation. First, the plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. Next, if the plaintiff proves such a *prima facie* case, the onus shifts to the defendant to articulate some legitimate nondiscriminatory reason for having treated the plaintiff as it did. Finally, if the defendant comes forward with such an explanation, the plaintiff may rebut it by proving, by a preponderance of the evidence, that the defendant's stated reason was not the true reason but a mere pretext. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The *McDonnell Douglas* rule applies when, as here, the plaintiff has lost his job. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Silberhorn v. General Iron Works Co.,* 584 F.2d 970 (10th Cir.1978). The ultimate burden of persuading the trier of fact that the plaintiff has been the victim of intentional discrimination remains, at all times, on the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

■ A *prima facie* case of racial discrimination may be proved by showing (1) the plaintiff is a member of a racial minority; (2) he was qualified for his job; (3) he was removed from his job; and (4) he was replaced by a non-minority employee. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6 (1981). Here Foster proved a *prima facie* case by a preponderance of the evidence. Plaintiff is black, was well qualified for his job with MCI, was fired when less qualified, non-minority employees were retained, and was not rehired when the only non-minority former employees who sought reemployment were rehired, in effect, being replaced by a less qualified anglo.

■ Upon receipt of that proof at trial, the onus shifted to MCI to articulate a legitimate, nondiscriminatory reason for its actions. MCI's change in marketing program was proffered as such a reason. I find and conclude that MCI was able to articulate a reason for continuing the employment of some non-minority individuals, in preference to the plaintiff, but not for all. MCI failed to articulate credible reasons for retaining or rehiring several of the less qualified anglos instead of the plaintiff. Plaintiff consistently had outperformed some of those retained or rehired. Moreover, he had more seniority with the company, and more managerial experience than some.

Furthermore, even for those individuals for whom MCI successfully articulated explanations, the various explanations are inconsistent. The rationale MCI used to explain the continued employment of any one anglo would have resulted in firing other anglos. MCI's post hoc explanations fail to explain why certain individuals were employed, and fail to establish any consistent or objective criteria to explain MCI's actions in choosing which employees to fire, which to retain, and which to rehire. The whole process seems to have been left in the actual control of the local branch manager, Harrell.

■ Thus, I conclude that MCI has failed to articulate a legitimate, nondiscriminatory reason for its decisions to fire and not to rehire the plaintiff. Plaintiff was eminently qualified for continued employment, and less qualified, non-minority persons were employed. I conclude that MCI's attempted explanations, based on subjective criteria,[2] fail to satisfy its burden to articulate some legitimate, nondiscriminatory reason for the decisions to lay-off the plaintiff and not to rehire him. *See Burrus v. United Telephone Company, Inc.,* 683 F.2d 339 (10th Cir.1982) (condemning use of subjective cri-

---

**2.** Although Harrell did not testify at trial, he had been deposed by the parties, and his deposition was introduced into evidence. During the deposition, he was asked if there were any objective criteria for his employment decisions. His response was: "I don't recall any, no." Deposition of John Harrell, taken May 14, 1982, at 12, line 11.

teria in "disparate treatment" case under Title VII).

■ Even if MCI had sufficiently articulated legitimate business reasons for the lay-off and rehiring decisions, I find that Foster proved MCI's explanation was pretextual. During the trial, I closely observed Foster while he testified. I also observed him while seated at counsel table, and while interrelating with others throughout the trial. I find that Foster is an intelligent, well educated, cultured, tactful, considerate and pleasant man. I further find that Foster's testimony was fair, direct, candid and highly credible. MCI's attempts to explain its employment decisions—in which Harrell had substantial input before he was fired immediately after being charged with racism—cannot obscure the real reason for those decisions.[3] My observations at trial, when coupled with the testimony and exhibits received at trial, compel me to find that the plaintiff has proved that MCI's explanations are merely pretextual.

■ I also find and conclude that the plaintiff was subjected to "disparate impact" in his employment with the defendant. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Williams v. Colorado Springs, Colorado School District # 11,* 641 F.2d 835 (10th Cir.1981). In a disparate impact case under Title VII, the discriminatory consequences of the employment practice are prohibited, even if the consequences are not the result of purposeful discrimination. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

Plaintiff established a *prima facie* case of discrimination under a disparate impact theory. As MCI changed its marketing policy, it also changed its sales staff. The changes occurred over a period of time, subjective criteria were used by the defendant, and the ultimate result was a sales force comprised solely of anglos. *See Williams v. Colorado Springs, Colorado School District # 11,* 641 F.2d 835 (10th Cir.1981); *Sledge v. J.P. Stevens & Co.,* 585 F.2d 625, 635 (4th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979).

■ Once the plaintiff established a *prima facie* case of discriminatory impact, the burden shifted to the defendant to show "that any given requirement [has] ... a manifest relationship to the employment in question." *Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (discussing the need for "business necessity"). Defendant failed to introduce any meaningful, objective standards to show what guided its employment decisions.

Unfortunately, subjective and personal criteria are often used to foster discrimination. *Muller v. United States Steel Corp.,* 509 F.2d 923 (10th Cir.1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972). Although subjective criteria are not to be condemned as being unlawful *per se,* I find that the employment of subjective criteria here, and the total absence of any meaningful standards, justify the inference, under the circumstances of this case, that the defendant unlawfully discriminated against the plain-

---

**3.** An example of Harrell's ill will toward the plaintiff exists in the employee evaluation forms completed by Harrell. In the categories in which objective criteria were used to evaluate the employee, Harrell gave the plaintiff high scores, as he had to do. But in categories in which subjective criteria could operate, the plaintiff received very low scores. Harrell made no attempt on the forms or otherwise, to explain the disparities in his evaluation.

After completing an employee's evaluation, the branch manager, such as Harrell, was to review it with the employee, and the employee was to sign the evaluation to show that he or she had reviewed it. Harrell apparently reviewed his evaluations with all employees, except the plaintiff. Instead of reviewing the plaintiff's file with him, Harrell simply signed the plaintiff's name to indicate that the evaluation had been reviewed by the plaintiff. Plaintiff testified, without contradiction, that he had not reviewed the forms with Harrell and thus had not been given the opportunity, accorded to all the anglo employees, to persuade Harrell to give him higher subjective evaluations.

tiff. *See Bauer v. Bailar,* 647 F.2d 1037 (10th Cir.1981). Defendant has failed to meet its burden of showing manifest necessity, and therefore, the plaintiff has proved his claim of disparate impact.

### B. *Section 1981.*

Plaintiff also seeks recovery under 42 U.S.C. § 1981.[4] Employment discrimination is actionable under Section 1981, and the remedies are independent of the remedies available under Title VII. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). There is no state-action requirement in Section 1981. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

Under 42 U.S.C. § 1981, a plaintiff has a claim for relief for denial of an opportunity to contract predicated on racial discrimination against non-whites. *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968 (10th Cir.1979); Comment, *Developments in the Law—Section 1981,* 15 Harv.C.R.–C.L.L.Rev. 29, 102 (1980).

The Supreme Court has not settled the issue whether proof of intent is required to establish a violation of § 1981. The Tenth Circuit has held that proof of discriminatory intent is necessary to prove a violation of 42 U.S.C. § 1982. *Denny v. Hutchinson Sales Corp.,* 649 F.2d 816 (10th Cir.1981). *Denny* further indicates, albeit obiter dictum, that discriminatory intent must also be shown to recover under § 1981. *But see Davis v. County of Los Angeles,* 566 F.2d 1334 (9th Cir.1977), *vacated as moot,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). Thus it is necessary to review the proof, in light of the plaintiff's three theories of recovery, to determine whether there has been an adequate showing of intentional discrimination to impose liability under § 1981.

A plaintiff proceeding on an "adverse impact" theory under Title VII does not have to show discriminatory intent. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Liability under an adverse impact theory is predicated on a policy of the defendant that is facially neutral but has an adverse impact on a protected group's employment. Thus, applying the *Denny* rule that a § 1982 case requires proof of discriminatory intent, and the dictum that § 1981 claims have a similar requirement, if the plaintiff had proved only the bare essentials of a Title VII disparate impact case, such proof would not support a § 1981 recovery in the Tenth Circuit.

An examination of *McDonnell Douglas* and *Burdine* indicates, however, that disparate treatment cases do require a showing of discriminatory intent. The proof of discriminatory intent required to establish liability under § 1981 apparently differs little, if at all, from the proof of discriminatory intent required to prove liability under a "disparate treatment" theory. As in any other kind of case, proof of intent is seldom, if ever, possible except by indirect or circumstantial evidence. Here the totality of the evidence, including Harrell's actions in evaluating Foster, as well as his general attitude in race relations, fully justifies an inference that there was intent to discriminate against Foster because Foster is black. I find and conclude that the defendant was guilty of intentional discrimination as required under § 1981.

Thus I find and conclude that Foster has proved all the elements of his § 1981 claim, including discriminatory intent. Therefore, the plaintiff has established the defendant's liability under § 1981 as well as under Title VII.

### III. REMEDIES.

Foster was fired by MCI on June 3, 1980. He does not request reinstatement with MCI. *See* 42 U.S.C. § 2000e–5. He

---

4. One important difference between an action pursuant to 42 U.S.C. § 1981 and an action under Title VII is that § 1981 does not have some of the procedural preconditions found in Title VII. Therefore, even if the plaintiff had not complied with the Title VII procedural requirements, he could still recover on his § 1981 claim.

does, however, request back pay, and he is entitled to that remedy.

The period for which back pay is recoverable commences on June 3, 1980, the day the plaintiff was fired. The back pay award will be based on the salary, commissions, and benefits that the plaintiff was receiving as an Execunet salesman prior to June 3, 1980, with all appropriate adjustments in pay or benefits he would have received had he not been fired. These amounts are to be adjusted for increases in the consumer price index since June 3, 1980. The back pay award is to be reduced by Mr. Foster's actual earnings during the back pay period.

As the prevailing plaintiff in a § 1981 action, Foster is entitled to general damages. I find that he incurred embarrassment, humiliation, severe anxiety and great emotional suffering as proximate results of the defendant's violation of his rights protected by § 1981. It is obvious from his appearance and testimony at trial that he is a cultured, sensitive person. Because of blatant racism, he was forced to endure protracted worry about unemployment. In effect, he was told that he was inherently inferior to his anglo co-workers, in spite of the plain facts that he consistently had excelled on every aspect of performance that was measured objectively. The outrageous and cruel treatment accorded him inflicted severe emotional suffering over a very substantial time. Section 1981 was intended to provide a meaningful remedy, including full damages, for just such situations. After full and careful consideration, I find and conclude that a fair, reasonable amount of actual, or compensatory, damages is $50,000.00, and I hold that he is entitled to that amount as general damages.

Foster has also asked for punitive and exemplary damages. In view of the fact that the evidence failed to implicate any official company policy in the discrimination, I decline to award punitive or exemplary damages. In view of Harrell's conduct and Gallagher's lack of candor in court, this is a close question. Perhaps an employer whose procedures are so loose and subjective as those used by MCI here ought to be made an example for others. But I have decided, reluctantly, to stay the court's power at this point.

Foster is also entitled to reasonable attorney's fees as the prevailing party in a civil action to enforce the provisions of the Civil Rights Acts of 1866 and 1964. 42 U.S.C. §§ 1988 and 2000e–5(k). As the prevailing party, he is also entitled to recover his reasonable costs.

Accordingly,

IT IS ORDERED that the plaintiff is entitled to back pay for having prevailed on his claims of discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiff is also entitled to $50,000 in general compensatory damages under § 1981, and to reasonable attorney's fees and the costs of pursuing this action.

IT IS FURTHER ORDERED that the plaintiff shall file his claim for back pay, attorney's fees, and costs on or before February 7, 1983, unless, for good cause shown by timely motion, that time is extended. Defendant may file any objections it may have on or before February 17, 1983.

The Court will hear appropriate motions on a priority basis. The Clerk of the Court shall withhold entry of judgment until the amounts to be awarded for back pay, attorney's fees, and costs are determined.