795 P.2d 1015

Patricia **BEHRMANN,**
Plaintiff–Appellee,

v.

**PHOTOTRON CORP., a Delaware corporation, Defendant–Appellant.**

No. 18790.

Supreme Court of New Mexico.

July 18, 1990.

Rodey, Dickason, Sloan, Akin & Robb, Robert M. St. John, Jo Saxton Brayer, An-

drew G. Schultz, Albuquerque, for defendant-appellant.

Eric Isbell–Sirotkin, Albuquerque, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

Plaintiff-appellee, Patricia Behrmann, was awarded damages of $94,400 by a jury on her "complaint of discrimination." She had sued defendant-appellant, Phototron Corporation, alleging that she was wrongfully terminated from her job as a salesperson because she became pregnant. Appellee claimed that appellant violated applicable portions of NMSA 1978, Sections 28–1–1 to –7, 28–1–9 to –14 (Repl.Pamp.1987), the "Human Rights Act" (the Act). She worked for appellant as a marketing and service representative from September 1982 through November 16, 1984. She learned on or about October 1, 1984, that she was pregnant. On October 31, 1984, appellant's agent, Craig Steblay, told her she was being laid off because of an economic reorganization, and that he told her "You'll probably not want to come back to work anyway * * *. Having a baby will really change you."

Evidence was presented that appellant hired a male employee to replace appellee and that the male employee made a higher salary than she did. She showed that she won several sales awards while she worked for appellant, and that her doctor notified her in writing that she was capable of continuing to work. Appellee contended that it is appellant's custom to discharge female employees when they become pregnant, and that Craig Steblay recommended discharge for other female employees who had become pregnant. Appellee sought settlement of her dispute or in the alternative front pay, plus all lost wages and benefits and actual damages.

At trial, appellant's evidence showed that it had been losing accounts nationally and in New Mexico and that it was no longer economically practical to maintain appellee's position. The male employee who was hired as appellee's replacement worked for a year to reorganize the region that appellee had serviced, when he too was terminated because of his inability to recoup appellant's client base in the region. A female employee of appellant testified that she and other female employees had taken pregnancy leave and returned to work with no loss of benefits or unequal treatment. At trial, appellant unsuccessfully attempted to introduce evidence of the prior determination by the New Mexico Human Rights Commission that appellee's charge of discriminatory practice against appellant had been found to lack probable cause.

The court instructed the jury, in pertinent part, as follows:

[No. 3] Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer a person's intent from surrounding circumstances. You may consider any statement made or act done or omitted by a party whose intent is in issue, and all other facts and circumstances which indicate his or her state of mind.

\*　　\*　　\*　　\*　　\*　　\*

[No. 13] If you find that the Defendant or its agents based its decision to layoff the Plaintiff because of sex stereotyping then this is evidence that the employer has acted with an improper motive based on pregnancy.

The court refused appellant's tendered instruction reading, "If you find that Phototron had a nondiscriminatory business reason for discharging plaintiff, you must find for Phototron."

The verdict form providing for damages read simply, "We find for the Plaintiff in the sum of $94,400."

Appellant raises three issues: (1) The court erred in giving the jury instruction No. 13 in that this instruction wrongfully highlighted appellee's evidence, and, when considered together with instruction No. 3, it was surplusage, thereby misleading the jury; (2) the court erred in refusing to admit evidence of the Human Rights Commission's determination that appellee's grievance action before the Commission

had been found lacking in probable cause; (3) the court erred in instructing the jury that it could consider as damages "the present cash value of future earning capacity reasonably certain to be lost in the future," because the Act provides only for "actual damages" and this phrase does not include future earning capacity. Having considered appellant's argument as to these issues, its briefs on appeal, the record and transcribed proceedings below, we affirm the verdict and judgment of the court.

## I. JURY INSTRUCTION

■ Appellant's argument as to the jury instruction is as follows. In instruction No. 3 the court detailed the meaning of intent, so that the jury was able from that instruction sufficiently to ascertain how to proceed in evaluating appellant's intent in discharging appellee. To add the further instruction, No. 13, in which the jury was told to consider whether appellant had been guilty of sex stereotyping in dealing with appellee, was in effect to compound the earlier instruction on intent. Instruction No. 13 thus amounted to a doubling of the instruction on intent—in appellant's words, instruction No. 13 "highlighted" the issue of intent, making it more probable that the jury would find discriminatory intent, one way or another, in the appellant's actions in terminating appellee.

Second, appellant argues that the court, by giving instruction No. 13, laid before the jury an improper standard by which the jury was to evaluate appellee's case. Appellant points to the recent case of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), in which a four-vote plurality of the Court expressed the view that:

> [W]hen a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account. Because the courts below erred by deciding that the defendant must make this proof by

clear and convincing evidence, we reverse the Court of Appeals' judgment against Price Waterhouse on liability and remand the case to that court for further proceedings.

*Id.* at 258, 109 S.Ct. at 1795.

*Price Waterhouse* was a case involving "mixed motives." There the employer argued that it denied partnership status to the employee because of her hostile behavior toward fellow employees and inability to get along with them amicably, rather than because of her gender. Evidence also showed that several persons involved in the decision whether to advance the employee to partnership status had been guilty of gender stereotyping, in one case, advising the employee that she should " 'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.' " *Id.* at 235, 109 S.Ct. at 1782.

In the case at bar, appellant argues that the court, by giving instruction No. 13, impermissibly asked the jury to decide appellee's case according to the standard set forth by the Court in *Price Waterhouse*, when, in fact, that standard was inapplicable. Appellant concedes that, if appellee had proven at trial that Mr. Steblay, rather than making a "casual remark" about appellee's wanting to continue her career after giving birth to a child, had engaged in blatant sex stereotyping of the type presented in *Price Waterhouse*, then instruction No. 13 would have been proper. In other words, appellant argues there was not substantial evidence to make this a "Price Waterhouse case," and thus a "Price Waterhouse instruction" was impermissible.

Appellant thus contends that the present case is not a "mixed motives" case. Rather, appellant argues, the present case is a traditional discrimination case to be decided by the traditional standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The standard announced in the latter case

allows proof of discriminatory intent absent direct proof by creating a presumption of discrimination. Initially, a plaintiff bears the burden of showing a prima facie case by "eliminat[ing] the most common nondiscriminatory reasons" for the employer's actions. The burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for his actions. Then, the plaintiff has the opportunity to show that the articulated reason is pretextual. This burden merges with the plaintiff's ultimate burden of proof of intentional discrimination.

*Smith v. FDC Corp.*, 109 N.M. 514, 517, 787 P.2d 433, 436 n. 1 (1990) (citations omitted).

Appellant argues that instruction No. 13 injected the standard of *Price Waterhouse* into the jury's deliberative process when in fact the standard of *McDonnell Douglas* was the proper standard by which the jury should have evaluated appellee's case. We have already stated, in reference to *McDonnell Douglas*, "The evidentiary methodology adopted therein provides guidance for proving a violation of the New Mexico Human Rights Act. Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own." *Smith v. FDC Corp.*, 109 N.M. at 517, 787 P.2d at 436. We also stated in that case, in words that could as well be repeated here: "Our analysis of this claim is based on New Mexico statute and our interpretation of our legislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute." *Id.*

Even assuming, however, that we rigidly adhered to the distinction between a "mixed motives"—*Price Waterhouse* case and an absence-of-direct-proof *McDonnell*

*Douglas*—case, as urged upon us by appellant, we would not find that the trial court erred in giving instruction No. 13. Nothing in the *Price Waterhouse* or *McDonnell Douglas* cases would prevent a trial court, as happened here, from instructing the jury on *both* methodologies.[1] We stated in *Smith*, "the entire *McDonnell Douglas* framework may be bypassed through a showing of intentional discrimination; the purpose of the *[McDonnell Douglas* test] is to allow discriminated-against plaintiffs, in the *absence* of direct proof of discrimination, to demonstrate an employer's discriminatory motives." 109 N.M. at 518, 787 P.2d at 437.

By giving jury instruction No. 11, the trial court covered the situation contemplated by the *McDonnell Douglas* framework. It was within the court's discretion, after hearing the evidence, to give or not to give this instruction, and we cannot say that the court abused its discretion in giving the instruction. The court also gave instruction No. 13, the "Price Waterhouse" instruction relating to evidence of sex stereotyping. From our review of the record, we likewise cannot say that the court abused its discretion in giving this instruction, as certain words and conduct by Mr. Steblay could well have been construed by the jury to have amounted to sex stereotyping. In other words, the jury was entitled to receive both a "*McDonnell Douglas*" instruction (No. 11) and a "*Price Waterhouse*" instruction (No. 13), in the court's discretion. In our view, the evidence supported both instructions and the court was justified in giving both instructions.

Nor do we find that instruction No. 13 "highlighted" instruction No. 3, thereby giving the jury too much latitude in finding discriminatory intent. In actuality, it is only instruction No. 3 that deals with intent. Although instruction No. 13 deals

---

1. The court gave instruction No. 11, which read as follows:

    Plaintiff has the burden of proving that the nondiscriminatory reasons given by Phototron for her discharge were a pretext. If Phototron has shown legitimate, nondiscriminatory reasons for discharging Plaintiff, then

    you must decide whether Plaintiff has proven that the reasons offered by Phototron were not the true reasons for her discharge, and that her employment was terminated because she was pregnant.
    This is a classic "*McDonnell Douglas*" instruction.

with "improper motive," it is more directly concerned with whether appellant practiced certain *behavior*, namely, sex stereotyping. We cannot say that the two instructions confused the jury. By hearing instruction No. 3, the jury could have considered whether the improper motive referred to in instruction No. 13 had been shown "by any statement made or act done * * * and all other facts and circumstances * * *." In our reading of the two instructions, they are complimentary. This is not a case where the two instructions were repetitious or contradictory or unduly emphasized evidence introduced by a party. *Cf. Whitfield Tank Lines, Inc. v. Navajo Freight Lines, Inc.*, 90 N.M. 454, 459, 564 P.2d 1336, 1341 (Ct.App.), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977).

## II. EVIDENCE OF THE HUMAN RIGHTS COMMISSION'S DETERMINATION OF NO PROBABLE CAUSE.

■ Assuming that the Commission's determination had probative value, it was within the discretion of the court to exclude evidence of the determination if the evidence's "probative value [was] substantially outweighed by danger of * * * waste of time or needless presentation of cumulative evidence." SCRA 1986, 11–403. This rule gives the trial court a great deal of discretion in admitting or excluding evidence, and we will reverse the trial court only when it is clear that the court has abused its discretion. *Mac Tyres, Inc. v. Vigil*, 92 N.M. 446, 448, 589 P.2d 1037, 1039 (1979).

We can not say that the court abused its discretion in disallowing evidence of the Commission's prior determination. In so finding, we take as instructive the court's ruling in *Denny v. Hutchinson Sales Corp.*, 649 F.2d 816 (10th Cir.1981), construing the federal equivalent of our own SCRA 1986, 11–803(H)(3), which reads, in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

Records, reports, statements or data compilations, in any form, of public offices or agencies setting forth

\* \* \* \* \* \*

(3) in civil actions and proceedings * * * factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In *Denny*, the court upheld the trial court's refusal to admit a report in favor of probable cause issued by the Colorado Civil Rights Commission in a housing discrimination case. The court noted with approval the factors that could be of assistance in ruling on admissibility of such a report as listed by the Advisory Committee in its notes to the federal rules of evidence: "[T]he timeliness of the investigation; the special skill or experience of the investigator; whether a hearing was held and the level at which it was conducted; possible motivation problems * * *." *Id.* at 821 (citations omitted).

Here, there was no hearing, but simply an investigation followed by a letter determination stating a finding of lack of probable cause. Appellant contends, nonetheless, that because the determination by the Human Rights Commission is subject to appeal, and because following a hearing that is appealed the Commission has the duty to file with the district court "so much of the transcript of the record [of the hearing] as the parties requesting the transcript designate as necessary for the appeal with the district court," NMSA 1978, Section 28–1–13(B), that the court was without discretion to deny admissibility of the letter determination of lack of probable cause.

We disagree. In the first place, there was no hearing, and in the second place, the Commission's letter determination was not a "transcript of the record." Nothing in the Act precludes the district court's adherence to SCRA 1986, 11–803(H)(3) in ruling on the admissibility of official reports or statements that are not in the nature of a transcript of the record. Moreover, although the Act uses the word "ap-

peal" in referring to the review which is to be undertaken by the district court, it is clear that the appeal contemplated is in actuality a trial de novo. *See* § 28–1–13(A). Consequently, ordinary rules of evidence govern the admissibility of administrative findings such as the one here.

As the court held in *Denny,* "The lack of formal procedures and an opportunity to cross-examine witnesses are proper factors in determining trustworthiness of the finding * * *. We believe that 'the trial court is the first and best judge of whether tendered.evidence meets the standard of trustworthiness and reliability.'" 649 F.2d at 821 (citations omitted). (*Cf. Perrin v. Anderson,* 784 F.2d 1040, 1047 (10th Cir. 1986)). Here, the court acted within its discretion in excluding evidence of the Commission's determination.

### III.  DAMAGES

■ The Act provides, "In any action or proceeding under [Section 28–1–13] if the complainant prevails, the court in its discretion may allow actual damages and reasonable attorney's fees * * *." Section 28–1–13(D). Appellant argues that the phrase "actual damages" precludes the award of prospective damages and that the court erred in instructing the jury on prospective damages. Appellant contends that because the verdict form was not delineated into spaces for present and future damages it is impossible to tell whether the jury "inflated" its award of damages. As a result, appellant argues, it should be given a new trial.

We disagree. The treatises affirm that the phrase *actual damages* is synonymous with compensatory damages and that compensatory damages are exclusive of punitive damages. *See* 22 Am.Jur.2d *Damages* § 3 (1988) ("Damages, generally speaking, are of two kinds: compensatory damages and punitive damages, and the term usually includes both types of damages. The term 'actual damages' is synonymous with compensatory damages, and excludes punitive damages;") *See also id.* § 24; H. Oleck, *Damages to Persons and Property*

§ 12 (1955) ("'Actual damages' mean the same thing as 'compensatory damages.' Both mean expenses which are the natural and reasonable result of an injury or loss.")

As for prospective damages, because they are a species of actual damages, they properly may be granted where evidence has been presented as to their present worth. *See* C. McCormick, *Handbook on the Law of Damages* § 161 (1935) ("[T]he plaintiff [wrongfully discharged from her employment] may recover not only for the loss of earnings already accrued, but for the prospective loss for the unexpired period;") Oleck, *supra* § 93 ("In general, when once a wrong has been committed, and a complete course of action established, the award of damages may include compensation for prospective and reasonably-certain future damages.") *See also id.* §§ 94–100.

Here, appellant does not argue that there is a lack of substantial evidence to justify the jury's award, but that the court erred as a matter of law in instructing the jury on "the present cash value of future earning capacity reasonably certain to be lost in the future." In this, appellant is in error. The court rightly instructed the jury on prospective damages. *See Smith,* 109 N.M. at 521, 787 P.2d at 440.

For the foregoing reasons, the verdict and judgment below are affirmed.

IT IS SO ORDERED.

MONTGOMERY, J., concurs.

RANSOM, J., concurs in result only.

RANSOM, Justice (specially concurring).

I concur with the result reached in this opinion, but write specially to question any consideration of whether the "mixed-motives" aspect of the *Price Waterhouse* decision is applicable to the State Human Rights Act. *See* 490 U.S. at 243–47, 109 S.Ct. at 1787–88 (Brennan, J., with whom Marshall, Blackmun, and Stevens, JJ., concurred) (when plaintiff in Title VII case proves employer's decision was based on a mixture of legitimate and illegitimate considerations, the burden of persuasion shifts to the employer to prove that it would have

made the same decision even had it not allowed illegitimate considerations to play a role in decision). *Cf. Id.* at 258–62, 109 S.Ct. at 1795–96 (White, J., concurring in judgment). Counsel for both parties conceded at oral argument that instruction thirteen was merely a definitional instruction consistent with the *Price Waterhouse* discussion of the concept of "sex stereotyping" as it relates to employment discrimination cases under federal law. *See Id.* at 248–52, 109 S.Ct. at 1790–91 (in enacting Title VII, Congress intended to eliminate sex stereotypes as a basis for disparate treatment of men and women in employer's decisional process).

Indeed, the text of instruction thirteen cannot reasonably be read to shift the burden of persuasion to the employer as might be appropriate in a true "mixed-motives"

case. Nowhere in this case was *Price Waterhouse* raised or argued as an appropriate methodology for assigning burdens to the parties. Moreover, as stated by the author, counsel for appellant conceded that, if substantial evidence was presented in this case of sex stereotyping connected with the decision to lay off appellee, then instruction thirteen was a proper definitional instruction. I agree there was substantial evidence of such stereotyping in this case; therefore, I would affirm the trial court.